**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equity Partners Group LLC, et al., | No. CV-25-00887-PHX-SHD |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Defendant City of Scottsdale (the "City") and Defendant Scottsdale Arts separately moved to dismiss Plaintiffs' Complaint, (Doc. 1), under Fed. R. Civ. P. 12(b)(6). For the following reasons, both motions, (Docs. 7, 10), will be **granted** as to Plaintiffs' federal claim. Because I decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, I will remand this case to Maricopa County Superior Court.

## I.    BACKGROUND

This case arises from a dispute over the proposed installation of an art display on the exterior of the Remi Hotel in Scottsdale, Arizona. Plaintiffs, a group of affiliated real estate developers, contend that the display—which they characterize as an "Art Wall"—was contemplated and effectively authorized by a Development Agreement they entered into with the City in 2020. Defendants contend they never approved the display and properly rejected it as inconsistent with the City's Cultural Improvements Program.

### A.    The Parties

Plaintiffs Equity Partners Group, LLC ("Equity Partners Group"), Maya Hotel, LLC

("Maya Hotel"), and Stockdale Capital Partners, LLC ("Stockdale Capital Partners") (collectively, "Plaintiffs") are the three named plaintiffs in this action. (Doc. 1 at ¶¶ 1–3.) Plaintiffs allege that they "owned (and own) properties south of Camelback Road and east of Scottsdale Road," and they "sought to develop the area to enhance the neighborhood and create a dynamic and inviting area that would benefit the City." (*Id.* at ¶¶ 11–12.) Plaintiffs refer to the area they sought to develop as the "Scottsdale Collection." (*Id.* at ¶ 12.)[1]

The City is an Arizona municipal corporation. (*Id.* at ¶ 5.) It established a Cultural Improvements Program by ordinance, codified at Scottsdale Revised Code ("SRC") § 7.1000 *et seq.* (*Id.* at ¶ 7(a).) The City designated a "Cultural Council" to review artwork commissioned for the Cultural Improvements Program. (*Id.* at ¶ 7(b).)

Defendant Scottsdale Arts is an Arizona nonprofit corporation that entered into "management services agreements" ("MSA") with the City to serve as the Cultural Council for the City's Cultural Improvements Program. (*Id.* at ¶¶ 6, 7(b).) Pursuant to the MSA, Scottsdale Arts is "contractually obligated to provide the City with advisory services for current and future arts and cultural affairs and facilities in the City." (*Id.* at ¶ 7(b).) As the Cultural Council, Scottsdale Arts "is charged with approving, approving with stipulations, or denying a property owner's proposed art plan in connection with real estate development regulated by the City." (*Id.* at ¶ 7(d).) "The City provides a right to appeal decisions of Scottsdale Arts to the City Council." (*Id.* at ¶ 7(e).)

Plaintiffs contend that by virtue of its role as the Cultural Council, Scottsdale Arts "functions as the City's designated agent to manage and approve art programs in the City, including art proposed by developers who seek to, or must, include art as a part of their developments." (*Id.* at ¶ 7(f).) Plaintiffs also allege that "Scottsdale Arts is substantially funded by the City and administers its programs using taxpayer funds." (*Id.* at ¶ 7(c).)

---

[1] The Complaint does not clearly delineate the distinct role of each named Plaintiff in the underlying development project. (*See generally* Doc. 1.) The only allegation connecting the three Plaintiffs to one another is that Stockdale Capital Partners "manages Equity [Partners Group] and Maya [Hotel] and other business entities." (*Id.* at ¶ 3.)

**B.    The Development Agreement**

In December 2020, the City entered into a Development Agreement (the "Agreement") with Equity Partners Group, and non-parties Shoeman, LLC, Triyar Capital LLC/Baseline Acquisition, LLC, and Stockdale Galleria Land Owner, LLC, for the redevelopment of properties located in downtown Scottsdale.[2] (*Id.* at ¶ 14; Doc. 7-1 at 2.) The Agreement was recorded with the Maricopa County Recorder's Office as instrument number 20201209037 pursuant to A.R.S. § 9-500.05. (*Id.*) The signing entities are defined collectively in the Agreement as the "Developer."[3] (*See* Doc. 7-1 at 2.)

The Agreement described the Developer's overarching approach as one focused on "place making" through "the introduction of art in unexpected, creative, and unique ways." (Doc. 7-1 at 3–4; Doc. 1 at ¶ 15(c).) To that end, the Agreement contemplated an "art-oriented environment" incorporating several categories of enhancements. (Doc. 7-1 at 3; Doc. 1 at ¶ 15(b).) Recital D described the Developer's intent to incorporate "artistically-inspired lighting features"—defined as "Lighting Enhancements"—rendered in "unique, artistic, and creative ways, including in projected and digital applications, to expand the incorporation of art features through light-infused installations." (Doc. 7-1 at 3; Doc. 1 at ¶ 15(b).) Recital G defined these and related features collectively as "Art Enhancements," expressly stating that they include "projection art, aerial and suspended art, streetscape and

[2]    In support of its Motion to Dismiss, the City submitted the Agreement as Exhibit A. (*See* Doc. 7-1.) Because the Complaint explicitly references and relies on the Agreement, and Plaintiffs' rights arising under it, (*see generally* Doc. 1), the Agreement is incorporated by reference into the Complaint, and the Court may consider it in ruling on the motions to dismiss without converting them into motions for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (holding that a court may consider documents incorporated by reference into a complaint on a motion to dismiss where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance"). The Agreement is also a matter of public record, having been recorded with the Maricopa County Recorder's Office pursuant to A.R.S. § 9-500.05, and the Court may take judicial notice of it on that independent basis as well. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." (citation omitted)).

[3]    The Agreement defines the signing entities collectively as the "Developer"—a term that includes Equity Partners Group as well as certain non-party co-signatories, and that is distinct from the Plaintiffs as a group for purposes of this Order. (*See* Doc. 7-1 at 2.)

way-finding art, murals and wall treatments, shade-creating art, interactive installations, sculpture, and destination art." (Doc. 7-1 at 4; Doc. 1 at ¶ 15(c).)  Recital G also provided that the Art Enhancements "may be deemed 'Art' under the City's revised City code" and would accordingly "be subject to the City's processes with respect to incorporation of art in conjunction with development." (Doc. 7-1 at 4; Doc. 1 at ¶ 15(d).)

Section 6.3 of the Agreement provided that the City's Cultural Improvement Program applied to the development plan and required the Developer to expend a specified amount on original artwork for each phase of the project pursuant to a "Final Art Plan established in cooperation with Scottsdale Art[s], which may . . . incorporate art through shade, lighting, signage, landscape and hardscape" expressly "subject to the process to be implemented with Scottsdale Art[s]." (Doc. 7-1 at 19–20; Doc. 1 at ¶ 15(g).)  If the Developer chose not to proceed with the Final Art Plan, it could instead make a monetary contribution to the Downtown Cultural Trust Fund in lieu of installing artwork. (Doc. 7-1 at 19–20.)

### C.    Development Review Board Approval and Art Master Plan

Following execution of the Agreement, Plaintiffs "sought necessary approvals from the City's Development Review Board . . . for a hotel project then known as the Maya Hotel," now known as the Remi Hotel. (Doc. 1 at ¶ 16.)  The Development Review Board held a public hearing on the project on May 6, 2021, and it "approved [Plaintiff's] plans for the Remi Hotel" including Plaintiffs' plans to install a "large scale mural Art Wall" and "the location of that Art Wall." (*Id.* at ¶ 19.)  After the Development Review Board approved the plans, Plaintiffs "sought approval from Scottsdale Arts of its Art Master [P]lan," as required under Section 6.3 of the Agreement. (*Id.* at ¶ 20; *see* Doc. 7-1 at 19–20.)

Plaintiffs' Art Master Plan included a sculpture by artist Daniel Popper, which Scottsdale Arts approved, and the proposed "Art Wall," to be designed by artist Ernest Roberts/Art Heavy. (Doc. 1 at ¶¶ 22, 24.)  Scottsdale Arts "expressed resistance to the Art Wall," and the CEO of Scottsdale Arts told Plaintiffs that "Scottsdale Arts did not have

jurisdiction to approve the Art Wall." (*Id.* at ¶ 24.)  Plaintiffs allege that, unbeknownst to them, the City communicated with Scottsdale Arts expressing the internal view that the Art Wall should not be approved, characterizing it as a "billboard" rather than art.  (*Id.* at ¶ 25.) Plaintiffs further allege that representatives of the City and Scottsdale Arts did not disclose these communications to Plaintiffs.  (*Id.* at ¶ 26.)  Nonetheless, City representatives instructed Plaintiffs to seek Scottsdale Arts's approval of the Art Wall.  (*Id.* at ¶ 27.) Plaintiffs allege that they complied but believed that Scottsdale Arts's review was largely a formality because the Development Review Board had already approved the Art Wall's location, and the City Council had already recognized lighting enhancements as "art" under the Code.  (*Id.* at ¶ 28.)

On August 14, 2024, Scottsdale Arts considered the Art Wall proposal at a public hearing.  (*Id.* at ¶ 29.)  Then-Mayor David Ortega attended the hearing.  (*Id.* at ¶ 30.)  At that hearing, the Scottsdale Arts Board ("the Board") voted to convene an executive session that was not listed on the posted agenda for the hearing.  (*Id.* at ¶ 32.)  Scottsdale Arts held a second public hearing on September 11, 2024, at which the Board again voted to convene an executive session.  (*Id.* at ¶ 34.)  Plaintiffs allege that both executive sessions lacked statutory authorization under "Arizona's Open Meeting Law."  (*Id.* at ¶¶ 32, 34.)

Following the September 11 executive session, Scottsdale Arts unanimously voted to deny the request for the Art Wall.  (*Id.* at ¶ 35.)  Plaintiffs appealed the denial to the Scottsdale City Council, and the City Council affirmed Scottsdale Arts's denial at its November 12, 2024 meeting.  (*Id.* at ¶¶ 37–38, 41.)  Plaintiffs assert that at the November 12 meeting, then-Mayor Ortega falsely stated that the Plaintiffs' "representatives had claimed at the August 14, 2024 Scottsdale Arts meeting that the Art Wall was to be a 'dynamic billboard.'" (*Id.* at ¶ 39.)  Plaintiffs contend that at the August 14 meeting their representative said "[t]here will be no advertising displayed on the board.  It's intended to be art, not a billboard."  (*Id.* at ¶ 40.)

Separately, Plaintiffs sent a public records request to Scottsdale Arts in September 2024.  (*Id.* at ¶ 44.)  Scottsdale Arts denied the request, with its CEO responding that

Scottsdale Arts is a private nonprofit organization not subject to public records obligations. (*Id.* at ¶ 45.)

## II.    PROCEDURAL HISTORY

Prior to filing this action, Plaintiffs served a notice of claim on the City on October 1, 2024, pursuant to A.R.S. § 12-821.01, (Doc. 7-7 at 2), and subsequently served a supplemental notice of claim on November 25, 2024, (Doc. 14-1 at 2).  Plaintiffs thereafter filed this action in the Maricopa County Superior Court on February 12, 2025.  (*See* Doc. 1 at 6–12.)  The City removed the case to this Court on March 17, 2025, invoking federal question jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claim under 42 U.S.C. § 1983, and supplemental jurisdiction over Plaintiffs' state law claims.  (*Id.* at 2.)  The parties did not assert diversity jurisdiction, and the parties do not appear to be diverse.  (*Id.* at 12–13.)

Plaintiffs assert six counts.  (*Id.* at 22–28.)  Counts 1 and 2—breach of the Agreement and breach of the implied covenant of good faith and fair dealing—are asserted against the City only.  (*Id.* at 22–24.)  Counts 3 through 6—violation of due process under 42 U.S.C. § 1983, violation of A.R.S. § 38-431 *et seq.* ("Arizona's Open Meeting Law"), violation of A.R.S. § 39-121 *et seq.* ("Arizona's Public Records Law"), and declaratory relief—are asserted against both Defendants.  (*Id.* at 24–29.)

On March 24, 2025, the City filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all six counts.  (Doc. 7.)  Plaintiffs responded, (Doc. 14), and the City replied, (Doc. 19).  On March 28, 2025, Scottsdale Arts filed its own Motion to Dismiss pursuant to Rule 12(b)(6), seeking dismissal of Counts 3, 4, 5, and 6—the only counts asserted against it.  (Doc. 10.)  Plaintiffs responded, (Doc. 15), and Scottsdale Arts replied, (Doc. 18).  The parties have requested oral argument.  (*See* Docs. 7, 10, 14, 15.)  The Court concludes that oral argument would not assist in resolving the motions.  *See* LRCiv 7.2(f).  Accordingly, the request for oral argument is denied.

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true and construed in the light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In making this determination, legal conclusions cannot be accepted as true, nor can "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)).  That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).  A "well-pleaded complaint may proceed even if" actual proof of those facts "is improbable[ ] and . . . a recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## IV.   ANALYSIS

The City moves to dismiss all six counts on five grounds: (1) Plaintiffs Maya Hotel and Stockdale Capital Partners lack Article III standing to assert claims arising out of a contract to which they are not parties, (Doc. 7 at 4–6); (2) Plaintiffs failed to comply with Arizona's notice of claim statute, A.R.S. § 12-821.01, requiring dismissal of all state law damages claims—Counts 1, 2, 4, and 5 (*id.* at 6–8); (3) Scottsdale Arts is not a public body subject to Arizona's Open Meeting Law or Public Records Law, which is a necessary predicate for Plaintiffs' claims against the City under Counts 4 and 5 (*id.* at 8–11); (4) Plaintiffs' § 1983 due process claim is legally deficient for multiple independent reasons (*id.* at 11–14); and (5) the City did not breach the Agreement as a matter of law (*id.* at 14–17).  Scottsdale Arts separately moves to dismiss the four counts asserted against it—Counts 3, 4, 5, and 6—on the grounds that it is a private nonprofit corporation that is neither a public body subject to Arizona's Open Meeting Law and Public Records Law nor a state actor for purposes of § 1983 liability, (Doc. 10 at 5–12), and that Plaintiffs' request for declaratory relief is duplicative of the underlying counts and fails to state an

independent basis for relief, (*id.* at 14–15).

Both motions are addressed together given the substantial overlap in the legal issues presented. I will first address Plaintiffs' only federal law claim—their § 1983 claim—before turning to their state law claims.

### D.     Due Process Under 42 U.S.C. § 1983—Count 3

To state a claim under § 1983, a plaintiff must allege that (1) the conduct complained of was committed by a person acting under color of state law and (2) that conduct deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1184 (9th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Defendants argue that Plaintiffs Maya Hotel and Stockdale Capital Partners lack standing to pursue a § 1983 claim, and further, that all three Plaintiffs have failed to allege they were deprived of any protected property interest that would trigger constitutional protection. (Doc. 7 at 4–5, 11–14; Doc. 10 at 9–14.) Each argument is addressed in turn.

#### 1.     Standing—Plaintiffs Maya Hotel and Stockdale Capital Partners

Article III of the United States Constitution requires that a plaintiff possess standing to pursue a claim in federal court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). An injury is particularized if it affects the plaintiff "in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1.)

The violation of contractual rights is "a harm traditionally recognized as providing a basis for lawsuits in American courts." *Hager v. Metro One Loss Prevention Servs. Grp., Inc.*, 2025 WL 1521225, at *5 (W.D. Wash. 2025) (citing *TransUnion LLC v. Ramirez*,

594 U.S. 413, 413 (2021)).  Invasion of a legally protected property interest is also a cognizable injury sufficient to establish Article III standing.  *Garza v. Woods*, 150 F.4th 1118, 1124 (9th Cir. 2025) (recognizing that "when someone—even the government" interferes with one's legally protected property interest, a cognizable injury has occurred); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples.").  And deprivation of a constitutional right—including the right to due process—is a recognized injury that confers standing.  *See Garza*, 150 F.4th at 1124 n.1 (a deprivation of property under the Due Process Clause is a cognizable Article III injury).

A motion to dismiss for lack of standing can be facial or factual.  *See* Fed R. Civ. P. 12(b)(1); *Pride v. Correra*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In evaluating a facial standing challenge, a court considers only the allegations in the complaint; reference to material outside the complaint cannot rebut a facial attack on standing.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  The City's standing challenge here is facial—it asserts that the allegations in the Complaint are insufficient on their face to establish that Maya Hotel and Stockdale Capital Partners suffered a cognizable injury—and thus only the allegations in the Complaint may be considered in evaluating standing.

The Complaint fails to allege any facts that support the inference that Stockdale Capital Partners and Maya Hotel suffered a cognizable injury.  Stockdale Capital Partners and Maya Hotel are not signatories to the contract underlying this dispute, so they cannot assert that their contractual rights were injured. (*See* Doc. 7-1 at 2.)  And given that the constitutional claim in this case is premised on the deprivation of those contractual rights

without due process, *see infra* Section (IV)(D)(2), those Plaintiffs fail to allege an injury to a constitutional right.

Stockdale Capital Partners and Maya Hotel appear to argue that their property interest in the Remi Hotel grants them standing. (*See* Doc. 14 at 15–16.) But the Complaint lacks sufficient allegations regarding the nature of their property interest to find that they have standing.[4] At most, the Complaint alleges that Stockdale Capital Partners has a managerial relationship with Equity Partners and Maya Hotel. (Doc. 1 at ¶ 3 ("Stockdale manages Equity and Maya and other business entities.").) But it is far from clear that Defendants' alleged breach of contract and attendant due process violations affected Stockdale Capital Partner's managerial interests in any way.

As for Maya Hotel, the Complaint contains no allegations regarding the relationship between Maya Hotel and Equity Partners. (*See generally id.*) This alone is sufficient to dismiss Maya Hotel for lack of standing at this stage. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers."). In briefing, Plaintiffs divulge that Maya Hotel owns the property on which the Remi Hotel stands. (Doc. 14 at 16.) But again, it is not evident that any such property interest was injured, or that any such injury was caused by Defendants' alleged conduct.

Plaintiffs argue that their claims fall within the "zone of interests" that confers standing because Maya Hotel has a direct stake in the outcome of this litigation as the owner of the property where the Remi Hotel stands, and that both entities have a sufficient "colorable interest" in the subject matter of the dispute to confer standing. (*Id.* at 15–16.) These arguments fail. The "colorable interest" standard applies primarily to claimants in civil forfeiture actions. *See, e.g.*, *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012). Here, the facts alleged do not support the conclusion that either

---

[4] The Complaint defines all three Plaintiffs collectively as the "Developer," (Doc. 1 at ¶ 4), and Plaintiffs' briefing repeats that characterization, (Doc. 14 at 15). The Agreement, however, defines "Developer" to include only Equity Partners Group and certain non-party entities—not Maya Hotel nor Stockdale Capital Partners. (Doc. 7-1 at 2.)

Maya Hotel or Stockdale Capital Partners had any property interest that was interfered with or seized.

The "zone of interests" argument fares no better. That test is a prudential standing doctrine imposed in addition to, not as a substitute for, the irreducible requirements of Article III, and a plaintiff must first satisfy Article III requirements before the zone of interest analysis is even reached. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004) ("In addition to the immutable requirements of Article III . . . a plaintiff's grievance must arguably fall within the zone of interests protected." (quotation marks omitted)). The colorable interest and zone of interest arguments thus fail—the former applies primarily in civil forfeiture actions and the latter supplements rather than replaces the irreducible requirements of Article III.

What the Complaint does allege—that Stockdale Capital Partners manages Equity Partners Group and Maya Hotel—does not establish that either entity suffered an individualized injury stemming from the denial of the Art Wall. A managerial relationship with the entity that holds the contractual right at issue is not a substitute for a direct, personal stake in the outcome of the challenged government action. *See In re Real Marketing Servs., LLC*, 309 B.R. 783, 788 (Bankr. S.D. Cal. 2004) (holding that managing member lacked standing to bring claims for damages of LLC); *cf. RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002) ("In general, shareholders lack standing to assert an individual § 1983 claim based on harm to the corporation in which they own shares."). Without more, neither Maya Hotel nor Stockdale Capital Partners has alleged a concrete and particularized injury sufficient to support standing under Article III. Accordingly, Maya Hotel and Stockdale Capital Partners lack standing to assert the due process claim in Count 3, and that claim will be dismissed as to those two Plaintiffs.

Defendants do not challenge Equity Partners's standing. And given Equity Partners alleges (1) well-recognized Article III injuries—breach of contract, violation of due process; (2) it personally suffered those injuries as a signatory to the Agreement; and (3) that its injuries are traceable to the Defendants' alleged conduct, I will proceed to consider

whether Equity Partners has stated a claim under § 1983.

## 2.    Failure to State a Claim

Equity Partners asserts a claim under 42 U.S.C. § 1983 against both Defendants for violation of the Fourteenth Amendment's Due Process Clause. It does not, however, clearly articulate its § 1983 claim. It is therefore unclear whether Equity Partners claims that the denial of the Art Wall violated its substantive due process rights, whether it contends it was entitled to additional procedural protections in connection with that denial, or both. In any event, because Equity Partners fails to allege it was deprived of a protected property interest, any formulation of the § 1983 claim fails.

The Fourteenth Amendment's due process clause encompasses two distinct theories of liability—procedural due process and substantive due process. "A procedural due process claim has two elements: deprivation of a constitutionally protected . . . property interest and denial of adequate procedural protection." *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010) (citing *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). To state a substantive due process under § 1983, a plaintiff must allege that the government deprived him "of life, liberty, or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quotation marks omitted). A threshold requirement to both theories "is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). Equity Partners has failed to adequately allege such an interest.

A protected property interest exists where an individual has a "legitimate claim of entitlement" derived from "existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. A party "must have more than a unilateral expectation of" the property interest. *Id.* "[D]eprivation of contractual rights may create a claim under section 1983 . . . [but] not *every* interference with contractual expectations

- 12 -

does so." *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, 1408 (9th Cir. 1987). "It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." *Id.* In fact, courts have been reluctant to extend constitutional protection to contract claims outside the employment context. *See id.* at 1409–10 ("[T]he farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public contracts.").

Equity Partners argues that the recorded Agreement created a constitutionally protected property interest in the Art Wall under: (1) A.R.S. § 9-500.05, which provides that the rights and obligations under a recorded development agreement are binding on the parties and their successors, and (2) Section 15 of the Agreement, which provides that the rights established by the agreement "attach to and run with the Property." (Doc. 15 at 15 (stating "Plaintiffs' rights in the [Development Agreement] have vested under state law, and those rights have attached to and run with the land as interests in real property pursuant to the agreement of the parties").)

A.R.S. § 9-500.05(D) provides that "[t]he burdens of the development agreement are binding on, and the benefits of the development agreement inure to, the parties to the agreement and to all their successors in interest and assigns." Accordingly, that statute does vest certain development rights upon recordation, and those vested rights may in some circumstances constitute protected property interests. The relevant question, however, is whether the Agreement created a legitimate claim of entitlement to approval of the Art Wall at issue in this case. Because it did not, Count 3 fails at the threshold regardless whether Equity Partner's claim is based on procedural or substantive due process.

Two features of the Agreement dictate this result: first, the Agreement's art approval process and second, the Agreement's description of allowable art enhancements.

a)      The Agreement's Art Approval Process

The Agreement's operative provisions establish that no specific art installation was

pre-approved or guaranteed, and therefore, Plaintiffs do not have a legitimate claim of entitlement to approval of the Art Wall. Section 6.3 of the Agreement required Equity Partners Group to commission and install artwork "pursuant to a Final Art Plan established in cooperation with Scottsdale Art[s]" and "subject to the process to be implemented with Scottsdale Arts." (Doc. 7-1 at 20.) Under that framework, approval of any proposed art plan was subject to Scottsdale Arts's discretionary review. A contractual right subject to open-ended discretion does not create a constitutionally protected property interest. *See Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."); *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) ("This wide discretion resting with the Gaming Commission negates Jacobson's claim to a protectible property interest created by the State."). The Agreement gave Equity Partners (and other non-parties that constitute the "Developer") the right to pursue an art-oriented development and to submit art plans for discretionary review. It did not guarantee approval of any specific installation. A contractual right to submit a proposal for discretionary review is not the same as a legitimate claim of entitlement to a favorable outcome of that review.

b)    <u>The Agreement's Description of Art Enhancements</u>

This conclusion is reinforced by the Agreement's text, which describes a general artistic vision that does not encompass any specific installation of the kind Equity Partners proposes. Equity Partners points to no language in the Agreement that creates a "legitimate claim of entitlement" to approval of the Art Wall. *Roth*, 408 U.S. at 577. It argues that the Recitals, which describe the types of art enhancements contemplated by the Agreement, gave it a protected property interest in the Art Wall. (Doc. 14 at 13–14; Doc. 15 at 15.) But this argument is unavailing.

Recital D of the Agreement describes "artistically-inspired lighting features" including "projected and digital applications" and "light-infused installations" as "Lighting Enhancements," and Recital G describes the artistic vision as encompassing "projection art, aerial and suspended art, streetscape and way-finding art, murals and wall treatments,

shade-creating art, interactive installations, sculpture, and destination art." (Doc. 7-1 at 3–4.)  Regardless of how the Art Wall is characterized, nothing in the Agreement's text guarantees approval of the specific installation Equity Partners proposed.  (*See generally id.*)  The Recitals describe a general artistic vision—they do not create a "legitimate claim of entitlement" to approval of any specific installation.  *Roth*, 408 U.S. at 577.

That the Agreement cannot be read to create a legitimate claim of entitlement to approval of the Art Wall is underscored by the record in this case, which does not consistently define what the "Art Wall" actually is, and instead reflects the parties' competing characterizations of the Art Wall.  The Complaint describes it variously as a "wall mural" with a medium that "may include, but [is] not limited to, wall art that is projected, illuminated, painted, banner, etc.," (Doc. 1 at ¶ 17), a "large scale mural Art Wall," (*id.* at ¶ 18), and an "Art Wall to be designed by Ernest Roberts/Art Heavy," (*id.* at ¶ 22).  The City characterizes it as a "12-story electronic display" and a "giant electronic screen."  (Doc. 7 at 3.)  Equity Partners does not dispute that characterization in the response, instead describing the Art Wall generally as "digital art."  (Doc. 14 at 13.) The City's reply presses the point further, noting that the Art Wall is "a massive LED screen." (Doc. 19 at 10–11.)

This definitional uncertainty is significant. The Agreement's art approval framework under Section 6.3 required submission of a Final Art Plan subject to Scottsdale Arts's discretionary review precisely because the nature and details of proposed installations would need to be evaluated on their specific merits.  That Equity Partners cannot consistently characterize what the Art Wall is confirms that the Agreement's general artistic vision cannot be read to create a legitimate claim of entitlement to approval of this specific installation.  *See Roth*, 408 U.S. at 577.

Indeed, if the Recitals established a contractual right to the Art Wall, the Agreement's approval framework under Section 6.3 would serve no purpose.  Courts decline to read contracts in a way that renders their provisions superfluous.  *Terrell v. Torres*, 248 Ariz. 47, 50, 456 P.3d 13, 16 (2020).  The Recitals must therefore be read as

describing a general artistic vision, not as granting approval of any specific installation. Recital G itself confirms this reading, acknowledging that the Art Enhancements "may be deemed 'Art' under the City's revised City code" and would accordingly "be subject to the City's processes with respect to incorporation of art in conjunction with development." (Doc. 7-1 at 4.)  The Recitals thus expressly contemplate that the approval process would apply and cannot be read to simultaneously establish a contractual right to the Art Wall and eliminate those processes.  To the extent Equity Partners contends the City breached the Agreement by failing to approve the Art Wall, that contention sounds in contract rather than constitutional law.  Section 1983 does not convert such disputes into federal due process claims.  *See San Bernardino Physicians'*, 825 F.2d at 1408–09.

Equity Partners further contends that various procedural failures by the City and the Cultural Council—including the refusal to hold a hearing, alleged interference by City officials and the Mayor, and alleged violations of Arizona's Open Meeting Law and Public Records Law—deprived it of due process. (Doc. 14 at 14–15.)  These arguments do not salvage the § 1983 claim.  Procedural due process protects against inadequate process; it does not create a protected interest where none otherwise exists.  *Olive v. City of Scottsdale*, 969 F. Supp. 564, 571 (D. Ariz. 1996) ("[T]here can be no deprivation of the right to procedural due process unless a plaintiff has a protected property or liberty interest.").  Because Equity Partners has not established a protected property interest in the approval of the Art Wall, no procedural irregularity in the review process, however significant, gives rise to a constitutional claim.

Equity Partners has not alleged the deprivation of a protected property interest, and the § 1983 claim—whether predicated on procedural or substantive due process—will therefore be dismissed as to both Defendants.  *See Wedges/Ledges*, 24 F.3d at 62.  Because these deficiencies arise from the face of the Agreement itself and from the requirements of established constitutional doctrine, no amendment could cure them.  Put differently, there are no set of facts that could be alleged that would identify a Constitutionally-protected property interest in the Wall Art.  Accordingly, leave to amend will be denied.  *See In re*

*Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) ("Although leave to amend should be given freely, denying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile." (quotation marks omitted)).

### E.     Supplemental Jurisdiction

Having dismissed the only federal claim without leave to amend, I now turn to whether to exercise of supplemental jurisdiction over the remaining state law claims. Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Courts may decline to exercise supplemental jurisdiction, however, if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Moreover, "[w]hen the single federal-law claim in the action [is] eliminated at an early stage of the litigation, the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) *superseded by statute on other grounds as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000); *see also Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("It is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court.").

In deciding whether to exercise supplemental jurisdiction, courts consider "what will best accommodate the values of economy, convenience, fairness, and comity." *Harrell*, 934 F.2d at 205 (quotation marks omitted). When all federal-law claims "are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7.

This case is still at an early stage and neither the parties nor I have expended significant resources in litigating it to date. The parties have filed one round of motions to dismiss but have not engaged in discovery or any other motions practice. "As a result, this case is still at an early stage, and retaining it in federal court would not meaningfully

advance the values of economy, convenience, or fairness." *Garcia v. Orion Plastics Corp.*, 2016 WL 2904853, at *4 (C.D. Cal. 2016). And given that the state law claims at issue present varied and complex questions of Arizona law, it is appropriate for purposes of comity to remand to state court. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."), *superseded by statute on other grounds as stated in Berrios–Cintron v. Cordero*, 976 F. Supp. 110, 111 n. 2 (D.P.R. 1997).

I therefore decline to exercise supplemental jurisdiction over the state law claims. *See Gesell v. City of Cottonwood*, 2025 WL 928885, at *12–13 (D. Ariz. 2025) (dismissing § 1983 claims for substantive and procedural due process violations, declining to exercise supplemental jurisdiction over remaining state law claims, and collecting cases with similar dispositions). This case will be remanded to Maricopa County Superior Court for adjudication of Plaintiffs' state law claims.

## V. CONCLUSION

Plaintiffs' Complaint fails to allege that Stockdale Capital Partners and Maya Hotel have standing to pursue a § 1983 claim and further fails to state a § 1983 claim for violation of the Fourteenth Amendment's Due Process Clause because Plaintiffs have not been deprived of a cognizable property interest.

Accordingly,

**IT IS ORDERED** granting Defendants' motions to dismiss Plaintiffs' 42 U.S.C. § 1983 claim (Docs. 7 and 10), without leave to amend. The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** directing the Clerk of Court to remand this action to Maricopa County Superior Court for adjudication of Plaintiffs' state law claims, and close this case.

Dated this 31st day of March, 2026.

_____
Honorable Sharad H. Desai
United States District Judge

- 18 -